UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LLOYD DAVIS,

        Plaintiff,

  v.

DAVID YBARRA, individually and
in his official capacity as a trooper for
the Michigan State Police,

        Defendant.

_____/

Case No. 4:04-CV-157

Hon. Richard Alan Enslen

**OPINION**

      This matter is before the Court on Defendant David Ybarra and Plaintiff Lloyd Davis' competing motions for summary judgment brought pursuant to Federal Rule of Civil Procedure 56. The motions have been briefed and the Court discerns no reason for oral argument. W. D. MICH. LCIVR 7.2(d).

**I.    BACKGROUND**

      Plaintiff is a private citizen and Defendant is a Michigan State Police trooper. On December 8, 2001, at approximately 3:00 a.m., Plaintiff was driving his pick-up truck on the rural two-lane roads of Calhoun County, Michigan. Michigan State Police troopers observed Plaintiff's vehicle and suspected he was speeding. The troopers executed a traffic stop on Plaintiff's vehicle, but Plaintiff fled the scene before the troopers could approach his vehicle. The troopers gave chase. Plaintiff then proceeded to lead the troopers on a 20 minute long high-speed pursuit that traversed two counties and a corn field, reaching speeds in excess of 80 miles an hour.

      The pursuing troopers advised the Michigan State Police dispatcher that they needed additional personnel to capture Plaintiff. Defendant and another trooper answered the call and

stationed their cruiser as a roadblock in an intersection Plaintiff was anticipated to arrive at. The cruiser, however, was positioned at the intersection in such a way that a vehicle could still pass the roadblock in the opposite lane of traffic. As Plaintiff approached the intersection he slowed his vehicle. Defendant exited the cruiser with his firearm drawn and called out to Plaintiff to stop his vehicle and end the chase. Plaintiff did not stop his vehicle and sped off again.

As Plaintiff's vehicle sped past Defendant, Defendant discharged his firearm at Plaintiff. Defendant fired seven rounds at Plaintiff, with three slugs finding their mark. One bullet traveled through the driver-side door of Plaintiff's pick-up truck. The bullet continued on and struck Plaintiff's left buttocks, exiting near his anus. The other bullets struck the vehicle's side panels and door, but missed Plaintiff's person. Despite his wound, Plaintiff did not stop his vehicle and continued on to the next intersection where the pursuing troopers caught up with him and rammed his vehicle with their cruiser, ending the pursuit. Plaintiff was then taken into custody and transported for medical treatment.

## II.  STANDARD OF REVIEW

Deciding a motion for summary judgment requires the Court to determine if there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file. *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The facts are to be considered in a light most favorable to the non-moving party, and ". . . all justifiable inferences are to be drawn in his favor." *Schaffer v. A.O. Smith Harvestore Prod.*, 74 F.3d 722, 727 (6th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,  255 (1986)) (other citations omitted).

Once the movant satisfies his burden of demonstrating an absence of a genuine issue of material fact, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 153-54 (6th Cir. 1990). The non-moving party may not rest on its pleading but must present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56(e)). It is the function of the Court to decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The question is "whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252. "The 'mere possibility' of a factual dispute is not enough,'" *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)), neither is the submission of *de minimis* evidence. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). Since both parties have moved for summary judgment on similar grounds, each litigant will be accorded the status of movant and non-movant when applicable. *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

**III.  DISCUSSION**

Plaintiff brought this action pursuant to Title 42 of the United States Code, section 1983, and alleges that Defendant unreasonably employed excessive force contrary to the Fourth and Fourteenth Amendments to the United States Constitution. Defendant believes he is entitled to summary judgment because his use of deadly force was reasonable since Plaintiff threatened him with physical harm. In other words, Defendant contends he acted in self-defense. In the alternative, Defendant believes he is entitled to qualified immunity for his role in the chase. Finally, Defendant asserts that

Plaintiff's suit against him in his official capacity is barred by the Eleventh Amendment to the United States Constitution. Plaintiff's Motion for Summary Judgment argues that Defendant unreasonably resorted to deadly force and Defendant was not in physical danger.

### A.   Excessive Force and the Fourth Amendment

The Fourth Amendment protects citizens from unreasonable seizures and consequently, excessive force claims are considered under the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Defendant believes it was reasonable to shoot Plaintiff in light of the threat presented. Plaintiff disagrees and perceives Defendant's use of deadly force as unnecessary and unreasonable.

In *Tennessee v. Garner*, 471 U.S. 1 (1985), the Supreme Court set forth specific parameters governing when it is reasonable for law enforcement officials to use deadly force.

> The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. It is no doubt unfortunate when a suspect who is in sight escapes, but the fact that the police arrive a little late or are a little slower afoot does not always justify killing the suspect. A police officer may not seize an unarmed, nondangerous suspect by shooting him dead . . . .
>
> . . . Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, ***if the suspect threatens the officer with a weapon*** or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Id.* at 11-12 (emphasis supplied). Thus, of critical import at this stage in the proceedings is whether Plaintiff threatened Defendant with his pick-up truck. Stated another way, does the evidence show

that Plaintiff attempted to run Defendant down with his vehicle, and thereby authorize Defendant's use of deadly force under *Garner*?[1] The answer to this question remains a mystery as two versions are supported by the record. Predictably, Defendant's version supports the use of deadly force and Plaintiff's does not.

Under Defendant's version of the facts, he was standing in the middle of the intersection and approached Plaintiff's vehicle. Plaintiff initially slowed but then decided to resume his flight. Defendant avers that Plaintiff directed his vehicle at him in an effort to break through the roadblock and continue his flight. Defendant had to dive from the vehicle's path to avoid being run over. As he dove, Defendant simultaneously discharged his firearm at Plaintiff and continued to do so as he fell backward into a ditch beside to the road. Defendant accounts for the angles at which his bullet's entered Plaintiff's vehicle—from the side and back—as being the final shots of the seven discharged rounds. Defendant posits that the first rounds came from an angle that would support his contention that he was danger (*i.e.*, from in front of Plaintiff's vehicle), but those shots missed Plaintiff's vehicle. The pursuing troopers corroborated Defendant's version of the facts.

Plaintiff's version differs in that he believes Defendant discharged his weapon from the side of the road only, away from any danger, because Defendant was angry with Plaintiff for failing to stop at the roadblock. Plaintiff states that Defendant was never in any danger and was situated in the ditch area when he sped past. In support of this assertion, Plaintiff points to the fact that all of Defendant's shell casings were found on the side of the road, suggesting that all shots were fired

---

[1] Plaintiff has not suggested that the use of his vehicle in the manner suggested by Defendant is not a weapon. The Court believes a car can be a weapon when used in such a way. *See Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992) (referencing *United States v. Sanchez*, 914 F.2d 1355 (9th Cir. 1990)).

from the ditch and not from the road. The entry angles of Defendant's bullets into Plaintiff's vehicle supports that contention.

Therefore, two versions of the incident are supported by credible evidence and it will be a jury's task to assign truth to one; be it: Defendant standing in the road and diving out of the way to save his life, discharging his firearm at Plaintiff out of self-defense, or Defendant standing in the ditch unreasonably and angrily discharging his weapon at Plaintiff for continuing on through the roadblock. Accordingly, summary judgment is inappropriate for either party.

### B.    Qualified Immunity

Defendant also believes he is entitled to qualified immunity. Qualified immunity shields government officials from monetary liability unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When determining if a law enforcement official is entitled to qualified immunity, the Sixth Circuit Court of Appeals endorses a sequential test. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999). First, Plaintiff has to allege a violation of a constitutionally or statutorily protected right; second, it must be shown that the right was clearly established such that a reasonable official would have understood his behavior violated that right; and third, Plaintiff has to allege sufficient facts, and support the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established rights. *Scicluna v. Wells*, 345 F.3d 441, 445 (6th Cir. 2003). Plaintiff is shouldered with the burden of proving that Defendant is not entitled to qualified immunity. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000).

As for the first step in the analysis, Plaintiff has sufficiently alleged that Defendant unreasonably used deadly force while seizing him, clearly implicating the Fourth Amendment. *Garner*, 471 U.S. at 11-12.  Continuing to the second step, when considering whether a right is clearly established, the Court will look first to decisions of the Supreme Court, then to decisions of the Sixth Circuit Court of Appeals, and finally to decisions of other circuits. *McBride v. Vill. of Michiana*, 100 F.3d 457, 460 (6th Cir. 1996) (citing *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir. 1991)).  Upon review of the status of the law, the Court asks: "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.*  At the time of the incident, it was clearly established that law enforcement personnel are prohibited from unreasonably using deadly force. *Garner*, 471 U.S. at 11-12.

Concerning the final task in the analysis, Plaintiff has alleged sufficient facts, supported by competent evidence, to indicate that Defendant's behavior was objectively unreasonable according to his version of the facts.[2]  The Court cannot unequivocally approve of Defendant's use of deadly force given that two supportable versions of the incident exist.  Were it known that Defendant was in fact in danger of being struck by Plaintiff's vehicle, then it would be entirely reasonable for Defendant to use deadly force.  However, of course, it would not be reasonable for Defendant to use

---

[2] The Court acknowledges the overlapping nature of its discussion concerning the reasonableness of Defendant's use of deadly force, but will continue the discussion nonetheless. *See Saucier*, 533 U.S. at 210 (JJ., Ginsburg, Stevens, and Breyer concurring) ("[T]he determination of police misconduct in excessive force cases and the availability of qualified immunity both hinge on the same question: Taking into account the particular circumstances confronting the defendant officer, could a reasonable officer, identically situated, have believed the force employed was lawful?").

deadly force were he not in danger (assuming the other *Garner* factors are absent). It is simply unclear whether Defendant's conduct was objectively reasonable, and therefore, the Court will deny his claim to qualified immunity. *See Polk v. Hopkins*, 129 Fed. Appx. 285, 291 (6th Cir. 2005) (when "[the plaintiff] has succeeded in establishing a fact issue as to whether [the defendant] used such an objectively unreasonable amount of force, [the defendant] must be denied qualified immunity on [the plaintiff's] excessive-force claim."); *Greene v. Barber*, 310 F.3d 889, 897-98 (6th Cir. 2002) (denying qualified immunity when essential facts required jury findings).

### C. The Eleventh Amendment and Defendant's Official Capacity

Defendant asserts that the Eleventh Amendment precludes suit against him in his official capacity. The Court agrees. Notably, Plaintiff has not responded to Defendant's Motion on this score. Suits against state officers in their official capacity are barred by the doctrine of sovereign immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 61-70 (1989). Therefore, because Defendant is a state official and has been sued in his official capacity, he is entitled to summary judgment on this ground.

### IV. CONCLUSION

Therefore, the Court will grant in part and deny in part Defendant David Ybarra's Motion for Summary Judgment. The Court will also deny Plaintiff Lloyd Davis' Motion for Summary Judgment. An Order and Partial Judgment consistent with this Opinion shall issue.

DATED in Kalamazoo, MI:  /s/ Richard Alan Enslen
    March 10, 2006  RICHARD ALAN ENSLEN
  SENIOR UNITED STATES DISTRICT JUDGE